THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEMLEM NEGA, *

Plaintiff, *

v. * Case No. TJS-24-161

YUMMY LLC, *et al.*, *

Defendants. *

* * * * * *

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff Lemlem Nega's Motion for Summary Judgment ("Motion") (ECF No. 48).[1] Having considered the submissions of the parties (ECF Nos. 48, 53, and 54), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

## I. INTRODUCTION

### A. Factual Background

Unless otherwise noted, the following facts are not in dispute. To the extent any facts are in dispute, they will be considered in the light most favorable to Defendants, as the nonmoving parties. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).

Plaintiff brought this lawsuit to recover for Defendants' alleged violations of federal and state wage payment laws. ECF No. 1. She alleges that from November 2020 through about November 2023 she was employed as a waitress at a restaurant called Lucy's Kitchen (the

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial, entry of final judgment, and all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 17.

"restaurant"), which was owned and operated by Defendants. *Id.* at 3. She worked for over 70 hours per week and was paid solely by tips. *Id.* at 4. Despite federal and state laws requiring otherwise, she alleges that Defendants failed to pay her the required minimum wage and failed to pay her for overtime work at the increased hourly rate. *Id.* at 4-5. She also alleges that Defendants withheld payment of direct tips that were owed to her. *Id.* at 6. In Count I, she claims that Defendants are liable for failure to pay minimum and overtime wages under the Fair Labor Standards Act ("FLSA"). *Id.* ¶¶ 58-62. In Count II, she alleges that Defendants are liable for failure to pay wages under the Maryland Wage Payment and Collection Law ("MWPCL"). *Id.* ¶¶ 63-77. And in Count III, she alleges that Defendants are liable for failure to pay minimum and overtime wages under the Maryland Wage and Hour Law ("MWHL"). *Id.* ¶¶ 78-85. Additional facts will be supplied below.

### B. Procedural History

Plaintiff filed her Complaint in this Court in January 2024. ECF No. 1. The parties conducted discovery and, after multiple extensions, discovery closed on March 25, 2025. ECF No. 36. Thereafter, Plaintiff filed the Motion, which is now ripe for decision.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere

existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves and the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## III. DISCUSSION

### A. There is a Genuine Dispute of Material Fact as to Whether Kebede Was an Employer

The FLSA defines an "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employers include those with managerial responsibilities and 'substantial control of the terms and conditions of the work of . . . employees.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Maryland law defines an "employer" in the same way: "a person who acts directly or indirectly in the interest of another employer with an employee." Md. Code Ann., Lab. & Empl. § 3-401(b); *see also* Md. Code Ann., Lab. & Empl. § 3-501; *Campusano v. Lusitano Const. LLC*, 208 Md. App. 29, 38 (2012).

To determine whether an employer-employee relationship exists, "courts look to the 'economic realities' of the relationship between the worker and the putative employer." *Chavez-DeRemer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 397 (4th Cir. 2025) (citation omitted). The "overarching concern" in this analysis is whether the putative employer "possessed the power to

control the worker[] in question." *Prusin v. Canton's Pearls, LLC*, No. JKB-16-0605, 2017 WL 5126156, at *11 (D. Md. Nov. 6, 2017). To assess whether an individual had operational control of a worker, courts consider factors such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted). The same analysis applies under the MWPCL and the MWHL. *Newell v. Runnels*, 407 Md. 578, 649 (2009). "The ultimate conclusion as to whether a worker is an employee or independent contractor under the FLSA presents a legal question." *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).

Plaintiff contends that Defendants were all employers under the FLSA, the MWPCL, and the MWHL. ECF No. 48-1 at 6. Defendants do not dispute that Defendant Yummy LLC ("Yummy") and Defendant Rekik T. Tessema ("Tessema") were Plaintiff's employers. ECF No. 53 at 18. But they dispute that Defendant Tsega Kebede ("Kebede") qualifies as an employer. *Id.*

In a prior state court proceeding, Kebede testified that after Tessema purchased Lucy's Kitchen, he helped her manage the restaurant. ECF No. 48-2 at 67. In fact, the presiding judge asked Kebede to clarify, "I'm sorry. You helped in managing the restaurant?" *Id.* Kebede responded, "yes." *Id.* Kebede also testified that when Tessema was "not around," he managed the restaurant for her. *Id.* at 70. This testimony is consistent with Kebede's affidavit, in which Kebede states that he would "occasionally oversee the restaurant when Defendant Tessema is out of the country," and that he would follow Tessema's "instructions on what needs to be done in the restaurant." ECF No. 53-2 at 1.

It is undisputed that Kebede has no ownership interest in Yummy LLC (the holding company for the restaurant) or the restaurant itself, and that he was not involved with the purchase

of the restaurant. *See* ECF No. 53-2 at 1. Kebede also denies that he ever had the authority to hire and fire employees of the restaurant, supervise or control their work schedules or conditions of employment, determine their rate and method of payment, or maintain employment records. *Id.* There is evidence that Kebede participated in Plaintiff's job interview and the hiring process generally (even if he did not have hiring authority on his own), that he was regularly present at the restaurant, and that he "participated in management decisions, and exercised control over restaurant operations alongside Ms. Tessema." *Compare* ECF No. 48-2 ¶ 5 *with* ECF No. 53-2 ¶ 4. Kebede personally guaranteed the restaurant's lease. ECF No. 48-2 ¶ 20 (stating that after the prior owner "transferred operation of the restaurant to its new purchasers, Tsega Kebede, along with Rekik Tessema, personally guaranteed its new lease with the landlord"). There is also evidence that Kebede helped Plaintiff document her employment. ECF Nos. 48-2 ¶ 44 (stating that Kebede created documentation to show that Plaintiff was an employee); 53-2 ¶¶ 7-8 (admitting that Plaintiff asked Kebede to "create a document that showed she was an employee" of Lucy's Kitchen, that Tessema was not involved in the creation of the document, that Kebede "had no authority to create employment documentation for Lucy's Kitchen employees," and that he created the document for Plaintiff as her friend).

The evidence about Kebede's role as a manager is somewhat thin. While Plaintiff points to general acts that Kebede took that are consistent with operational control over an employee, the evidence does not establish the scope or extent of this authority. A reasonable jury could find that Kebede did not exercise sufficient operational control to qualify as an employer. A reasonable jury could also find the opposite and conclude that Kebede did qualify as an employer. Because the evidence would permit a jury to make competing reasonable inferences, the Court finds that there is a genuine dispute of material fact as to Kebede's status as an employer and that Plaintiff has not

shown that she is entitled to judgment as a matter of law on this point. The Motion is granted to the extent that it seeks an order finding that Yummy and Tessema were Plaintiff's employers but denied to the extent that it seeks an order finding that Kebede was Plaintiff's employer.

### B. Defendants Paid Plaintiff No Direct Wages and Cannot Benefit from the Tip Credit Provision

The FLSA requires employers to pay non-exempt employees a wage equal to or greater than the federal minimum wage for each hour worked.[2] 29 U.S.C. § 206(a)(1). The FLSA has a "tip credit" provision that allows employers to pay tipped employees a lower wage ($2.13 per hour) if the employees receive tips that raise their total pay to at least the federal minimum wage, and if certain other conditions are met. *Su v. Spearman, Inc.*, No. TDC-20-3585, 2024 WL 665445, at *11 (D. Md. Feb. 16, 2024) (citing 29 U.S.C. § 203(m)(2)). To claim the tip credit, the "employer must have: (1) paid employees at least $2.13 per hour as base pay; (2) informed the relevant

[2] Defendants do not dispute that the FLSA applies. *See* ECF No. 54 at 1-2 (noting that Defendants did not dispute Plaintiff's Statement of Uncontested Facts as to ¶¶ 1, 2, 6, 8, 9, 14, 20-22, 24-25, 28-29, 31, 34-36, 54, 61-62, and 71; explaining that these facts establish "enterprise coverage, zero wage payments, failure to provide tip-credit notice, failure to maintain required payroll records, withholding of earned wages, and reckless disregard, if not prior knowledge, of wage obligations"). Accordingly, the Court finds that there is no dispute about Plaintiff's dates of employment; the corporate entity that owned the restaurant; the owners of the restaurant; the restaurant's typical hours of operation; that Plaintiff was never paid a direct wage and was only paid through tips; that Defendants did not pay Plaintiff the minimum wage required by federal, state, and Montgomery County law; that Defendants never paid Plaintiff overtime wages; that Defendants did not provide Plaintiff with wage statements or pay stubs; that Defendants failed to maintain required payroll records; that Defendants failed to notify Plaintiff of any tip credit; that Defendants did not provide their waitresses a time clock or sign-in system to record work hours; that Defendants' Clover point-of-sale system did not record actual start and end times to document the hours of waitresses' work; that Defendants used the Clover point-of-sale system to track sales rather than employee work hours; that Plaintiff's tips were the sole source of income from Defendants; that Defendants regularly acquired food products from suppliers located in the District of Columbia and that these and other products were transported across state lines in interstate commerce as a regular and continuing part of the restaurant's operations; and that the restaurant had two employees who, as part of their job duties, handled food products and alcoholic beverages that had been produced outside Maryland and traveled in interstate commerce. *See* Fed. R. Civ. P. 56(e).

employees that the tip credit was being claimed; and (3) allowed the employees to retain all tips that they received, except that tips may be pooled among employees who 'customarily and regularly receive tips.'" *Id.* (citing 29 U.S.C. § 203(m)(2) and *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680-81 (D. Md. 2012)). Maryland state wage payment laws have the same requirements, subject to differences in the minimum wage rate. *See Marsh v. Bottoms Up Gentlemen's Club*, No. EA-23-1157, 2025 WL 2049980, at *5 (D. Md. July 22, 2025). "It is the employer's burden to show that it has satisfied all the requirements for tip-credit eligibility." *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467-68 (5th Cir. 1979)); *Prusin*, 2017 WL 5126156, at *4.

As explained above, the undisputed evidence is that Defendants did not pay Plaintiff any direct wages and did not provide Plaintiff with any tip-credit notice. Because an employer must strictly comply with these requirements to claim the tip credit, and because Defendants did not, they cannot claim the tip credit as a partial defense to Plaintiff's claims under the FLSA and the state wage laws.

### C. Defendants Failed to Pay Minimum and Overtime Wages as Required by the FLSA and Maryland Law

There is no dispute that Defendants failed to pay Plaintiff the required minimum and overtime wages owed to her under the FLSA and Maryland law. *Portillo v. H Rest. & Night Club*, No. PX-21-2894, 2024 WL 1256265, at *6 (D. Md. Mar. 25, 2024) (explaining that "[t]he FLSA and MWHL require employers to pay their employees the minimum wage for all hours worked, and overtime pay of at least one and one-half times the regular wage for hours worked over 40 hours per week," and citing 29 U.S.C. §§ 206(a), 207(a); Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a); *Watkins v. Brown*, 173 F. Supp. 2d 409, 416 (D. Md. 2001); and *Turner v. Hum. Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003)).

Plaintiff has established that Defendants are liable for failing to pay Plaintiff the minimum wage owed to her. And because Defendants are not entitled to claim the tip credit as an offset against their minimum-wage payment obligations to Plaintiff, they owe Plaintiff the minimum wage for every hour she worked, tips notwithstanding. *See* 29 U.S.C. § 203(m); Md. Code Ann., Lab. & Empl. § 3-419. The parties disagree about the number of hours Plaintiff worked and the minimum-wage rate to which she is entitled.

The Court will discuss the number of hours that Plaintiff worked below. But as to minimum-wage rate to which Plaintiff is entitled, the Court must address Defendants' argument that Plaintiff is precluded from recovering under the Montgomery County, Maryland, minimum wage because she did not plead a violation of the Montgomery County Minimum Wage Law as a separate claim in her Complaint. ECF No. 53 at 20.

In her Complaint, Plaintiff brought claims under the FLSA, the MWHL, and the MWPCL. The FLSA requires employers to pay the federal minimum wage, and the MWHL requires employers to pay the Maryland state minimum wage. The MWPCL does not set wage rates but instead regulates the timing and manner of payment. Throughout her Complaint, Plaintiff alleged that Defendants failed to pay her the minimum wage in accordance with the law of Montgomery County, Maryland, but she did not bring a separate claim under Montgomery County law, as plaintiffs in wage and hour cases commonly do.

Out of an abundance of caution, and to ensure that no party is unfairly prejudiced, Plaintiff will be ordered to file an amended complaint that includes a claim under the Montgomery County Minimum Wage Law. In the Court's view, Plaintiff's Complaint contains sufficient factual allegations to support such a claim, so Plaintiff should not include additional factual allegations that might entitle the parties to more discovery. The Court makes this ruling from a recognition

that, although Rule 8's notice-pleading standards are aimed at apprising a defendant of the nature of the claim and the grounds upon which it rests, the Fourth Circuit strictly enforces the rule against constructively amending a complaint through arguments made at summary judgment. *See generally Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (explaining that "a plaintiff may not raise new claims after discovery has begun without amending his complaint"); *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).") (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

It is unclear whether this amendment is necessary, but the amendment should impose no burden on Plaintiff and will prevent any prejudice to Defendants as this case proceeds. Notwithstanding Rule 15(a)(3), the Court orders that Defendants will not be required to answer the amended complaint, and the Court will consider Defendants to have denied all new allegations and asserted all affirmative defenses consistent with their answers to the original complaint. Provided that Plaintiff complies with this order, the determination of the minimum wage rate that governs Plaintiff's damages will be a question of law to be resolved at the conclusion of trial.

**D. There is a Genuine Dispute of Material Fact as to the Hours Plaintiff Worked**

Based on the evidence before it, and viewing the evidence in the light most favorable to Defendants, the Court finds that there is a genuine dispute of material fact as to the number of hours that Plaintiff worked.

The FLSA and Maryland law require employers to keep records of a worker's wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; Md. Code Ann., Lab. & Empl. § 3-424. The undisputed evidence shows that Defendants failed to

maintain the required records of Plaintiff's wages, hours, and other conditions and practices of employment at the restaurant. Still, while it is the employer's legal duty to maintain wage and hour records, the employee has the initial burden of proving that they worked a certain number of hours for which they were not properly compensated. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Marroquin v. Canales*, 505 F. Supp. 2d 283, 297 (D. Md. 2007). This standard of proof is forgiving and was designed to avoid penalizing an employee because of an employer's failure to maintain adequate records. *Mt. Clemens*, 328 U.S. at 687-88. Once the employee produces sufficient evidence to show the "amount and extent" of uncompensated work "as a matter of just and reasonable inference," *id.*, the burden shifts to the employer to "come forward with evidence of the exact number of hours worked or with evidence to negate the reasonableness of the inference to be drawn from the plaintiff's evidence." *Marroquin*, 505 F. Supp. 2d at 297 (citation omitted). If the employer fails to produce such evidence, "the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens*, 328 U.S. at 688.

*Mt. Clemens* provides a burden-shifting framework to be used at summary judgment, "where it serves as an evidentiary tool to determine whether a genuine dispute of material fact exists regarding the number of hours an FLSA plaintiff worked." *Johnson v. Helion Techs., Inc.*, No. DKC-18-3276, 2022 WL 3043413, at *6 (D. Md. Aug. 2, 2022). It also provides a framework for "what sort of evidence is sufficient for a plaintiff to prove a wage-and-hour claim." *Id.* And it supplies two methods by which an employer may rebut a plaintiff's evidence of hours worked: by providing the employer's own evidence or by providing evidence that undermines the reasonableness of the inference to be drawn from the plaintiff's evidence. *Mt. Clemens*, 328 U.S. at 688. When an employer's evidence "calls into question the veracity" of a plaintiff's asserted

hours, the Court will find summary judgment to be precluded by a genuine dispute of material fact. *See, e.g., Diaz Mancilla v. Chesapeake Outdoor Services, LLC*, No. JMC-22-32, 2023 WL 3569815, at *6-7 (D. Md. May 18, 2023); *Jackson v. Egira, LLC*, No. RDB-14-3114, 2016 WL 1558136, at *7 (D. Md. Apr. 18, 2016).

Plaintiff has provided sufficient evidence to support a finding that she worked 5,467 hours from 2021 through 2023, consisting of 3,719 regular hours and 1,748 overtime hours. *See* ECF Nos. 48-1 at 14; 48-2 at 20-21. Plaintiff created this reconstruction of her hours worked based on records of the sales transactions maintained in the restaurant's Clover sales system, with additional time tacked on to the beginning and end of each workday because the system did not keep track of Plaintiff's typical schedule or when exactly she arrived or departed on any given day. The burden thus shifts to Defendants.

Defendants provide their own reconstruction of Plaintiff's hours worked and also seek to rebut the reasonableness of the inference to be drawn from Plaintiff's evidence. *See* ECF No. 53 at 21-23. Defendants have provided evidence that the Clover records indicate that Plaintiff worked only 47.9 hours per week on average (with 30 minutes added to the beginning of each day worked and the end of her shift being the time the restaurant closed), significantly less than her claimed average of 72 hours per week. *Id.* Defendants argue that Plaintiff has provided nothing more than her own statements to support her estimate, and that her statements are not reliable. *Id.* Defendants state that while she was working for the restaurant, she falsely represented to a state agency that she was unemployed. *Id.* at 22. In support of this argument, Defendants have submitted a copy of unemployment insurance application that Plaintiff submitted on January 28, 2021. ECF No. 53-6. In this application, Plaintiff stated under penalty of perjury that her "employer temporarily shut down due to COVID-19 with the expectation that [she would] return when business resumes" and

that she "quit [her] job or [her] employer temporarily shut down/closed due to COVID-19." ECF No. 53-6 at 5. Defendants point out that the same week she submitted this apparently false application, she worked at least 21.7 hours at the restaurant. ECF No. 53 at 22. Defendants submit evidence that Plaintiff was approved for unemployment compensation and that she was required to notify the state agency if she became employed again. ECF No. 53 at 22. Defendants state that Plaintiff failed to do so and, as a result, she obtained unemployment compensation payments from February 2021 through July 2021 even though she was working at the restaurant during the same period. *Id.* Defendants contend that Plaintiff's dishonesty in connection with her unemployment insurance application and payments "undermines her credibility as a witness and further demonstrates the unreliability of her estimate of her work hours." *Id.* at 23.

The Court finds that Defendants' evidence and hours-worked reconstruction call into question the veracity of Plaintiff's evidence of uncompensated hours worked. It is not the province of the Court to make credibility determinations or to decide which of two plausible reconstructions of the hours that Plaintiff worked is true. There is no question that Plaintiff worked regular and overtime hours for which she was not compensated as required by the FLSA and Maryland law. But the number of those hours is genuinely in dispute and must be resolved by a factfinder at trial.

**E. There is a Genuine Dispute of Material Fact as to Willfulness**

Plaintiff argues that Defendants' violations of the FLSA were willful, such that the FLSA's three-year statute of limitations applies. ECF No. 48-1 at 17-18; *see generally Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015) (explaining that "the length of the FLSA's statute of limitations depends upon whether the violation at issue was willful," and that "[i]f it is not willful, the limitations period is two years, but the period is three years for willful violations"). In their argument, Defendants assume that the three-year statute of limitations applies, *see* ECF No.

53 at 4, but also deny that Defendants' violations were willful, *id.* at 23. In so doing, it appears that Defendants conflate two legal standards: willfulness under 29 U.S.C. § 255(a) (for determining the statute of limitations) and good faith under 29 U.S.C. § 260 (for determining liquidated damages). While these standards are similar, they "need not go hand in hand." *Carrera v. E.M.D. Sales Inc.*, 75 F.4th 345, 354–55 (4th Cir. 2023), *cert. granted*, 144 S. Ct. 2656 (2024), *and rev'd and remanded on other grounds*, 604 U.S. 45 (2025).

To demonstrate that an employer's violation of the FLSA was willful under § 255(a), a plaintiff must prove that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)). "Negligent conduct is insufficient to show willfulness." *Id.* Willfulness under the FLSA is a question of fact and is not "treated any differently from other factual determinations relating to application of a statute of limitations that are routinely submitted to the jury." *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992); *see also Sama v. Turning Point, Inc.*, No. JMC-22-02344, 2024 WL 112030, at *8 (D. Md. Jan. 10, 2024) ("This Court is consistently hesitant to rule on the 'willfulness' issue at the summary judgment stage when presented with competing plausible justifications for an employer's conduct.").

Under the FLSA, an employer who has violated the statute is liable to the employee "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court, "in its sound discretion, may refuse to award liquidated damages if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) (quoting 29 U.S.C. § 260). The

employer bears the burden to establish this defense. *Donovan v. Bel–Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985).

Plaintiff argues that the Court should award summary judgment in her favor on the issue of willfulness for numerous reasons. She points to evidence that Defendants were advised about recordkeeping requirements when they purchased the restaurant, but Defendants dispute this evidence. *See* ECF Nos. 48-1 at 17 & 53 at 23. She notes that Defendants were previously sued for violating the FLSA, a point that Defendants concede, but she says little else about the nature of the prior litigation. *Id.*; ECF No. 48-2 at 24 ("Upon information and belief, Defendants have been sued before for FLSA violations involving failure to pay proper wages. This prior litigation demonstrates their awareness of legal requirements and makes their violations in [this] case willful."). She points to Defendants' changed practices after this lawsuit was filed, but Defendants insist that they "implemented this change to prevent future compliance issues." ECF No. 53 at 24. She invokes the extent of Defendants' recordkeeping and wage payment violations but, as stated above, the extent of Plaintiff's uncompensated work is in dispute. She argues that the nature of Defendants' violations—paying employees only with tips and zero direct wages—establishes a "clear violation of fundamental wage requirements." ECF No. 48-1 at 18. But Defendants contend that it was Plaintiff who requested that she be paid in this manner and that Defendants' review of their Clover records indicated that Plaintiff made at least the minimum wage each week in tips. ECF No. 53 at 23.

Plaintiff has not established willfulness as a matter of law. There are genuine disputes of material fact regarding how Defendants violated the FLSA. On this record, a reasonable jury could conclude that Defendants acted negligently in violating the FLSA, which would not support a finding of willfulness. Accordingly, summary judgment on the issue of willfulness is denied. And

to the extent that Plaintiff seeks summary judgment on the issue of liquidated damages, her request is denied because there has been no determination of the amount of Defendants' liability.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 48) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted to the extent that it seeks an order finding that Tessema and Yummy were Plaintiff's employers, that Defendants cannot rely on the tip-credit defense, and that Defendants generally violated the FLSA, the MWHL, and the MWPCL in failing to pay Plaintiff the minimum and overtime wages due to her. The Motion is otherwise denied, with all remaining issues to be decided by a factfinder at trial and the Court after the conclusion of trial. A separate Order will accompany this opinion.

Date: September 1, 2026

/s/
Timothy J. Sullivan
Chief United States Magistrate Judge